# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**JUANITA HUTCHINSON**  PLAINTIFF

V.  CAUSE NO.: 4:07CV37-SA -EMB

**RAY SHUMAN and FIKES TRUCK LINE, INC.**  DEFENDANTS

## ORDER AND MEMORANDUM OPINION ON FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now before this Court, Plaintiff's First Motion for Partial Summary Judgment [35]. The Plaintiff asserts that if Shuman is determined by the jury to be negligent, Fikes Truck Line should be held strictly and vicariously liable under the Federal Motor Carrier Safety Act. At the final pretrial conference in this case, the Court requested that the parties supplement their briefing on the issue of liability of the common carrier, Fikes Truck Line, Inc. ("Fikes"). After reviewing the motions, responses, additional briefing, and authorities, the Court makes the following findings:

Pursuant to an agreement entered into on July 7, 2003, Fikes leased from Ray Shuman a tractor and trailer for transportation of one or more loads of general commodities. An accident occurred between Ray Shuman and Juanita Hutchinson, the plaintiff here, on Highway 82 in Greenville, Mississippi. Fikes argues that Ray Shuman was an independent contractor, and thus, Fikes is not liable for this accident.

Leases between regulated carriers and owner-operators are subject to federal law. 49 U.S.C. § 14102. The Interstate Commerce Commission (ICC) was the entity with regulatory authority over licensed motor carriers prior to January 1, 1996. Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc., 192 F.3d 778, 781 (8th Cir. 1999), *cert. denied*, 529 U.S. 1066, 120 S. Ct. 1671, 146 L. Ed. 2d 480 (2000). In addition to ICC's codified authority, it also issued regulations governing

owner-operator leases of equipment to authorized carriers. See 49 U.S.C. § 14102; 49 C.F.R. § 376. Congress found that the common practice of leasing equipment by a carrier operating in interstate commerce often led to abuses that presented a threat to the public and the trucking industry. Thus, the Interstate Commerce Act was amended to give the ICC the power to regulate non-owned equipment by interstate carriers. 49 U.S.C. § 304(e) (1956).

With the enactment of the Interstate Commerce Commission Termination Act (ICCTA) of 1995, the motor carrier regulatory functions and responsibilities were transferred from the ICC to the Department of Transportation and the Surface Transportation Board. 49 U.S.C. § 13501. The ICC was replaced with the Federal Motor Carrier Safety Administration, under the Department of Transportation, which adopted the former ICC regulations and promulgated new ones.

The Federal Motor Carrier Safety Act provides:

> (a) . . . The Secretary [of Transportation] may require a motor carrier . . . that uses motor vehicles not owned by it to transport property under an arrangement with another party to . . . (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.

49 U.S.C. § 14102. Plaintiff contends that this regulation and the cases construing it impose upon lessee-carriers strict, absolute and vicarious liability for negligence committed while the tractor-trailer is being operated pursuant to a lease between lessor and lessee. Defendant Fikes rebuts this assertion by bringing forth a federal regulation, 49 C.F.R. § 376.12, which the Secretary of Transportation promulgated in response to and as authorized by 49 U.S.C. § 14102.

49 C.F.R. § 376.12 governs leasing regulations and requirements. That regulation states:

> (c)(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease

2

> shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.
>
> (4) Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 14102 and attendant administrative requirements.

Defendants argue that the federal regulations at issue here were promulgated to "correct abuses that had arisen under often fly-by-night arrangements with consequent damage to the development and maintenance of a sound transportation system and to the public interest from a helter-skelter operation of thousands of unregulated vehicles on the highways as a menace to safety." Simmons v. King, 478 F.2d 857, 866-67 (5th Cir. 1973). Defendants assert that as Fikes has contracted with Shuman to create an independent contractor relationship and has taken care only to hire solvent insured drivers, Fikes should not be held vicariously liable when the lease at issue was not a "fly-by-night arrangement."

Fikes' lease with Shuman provided for an "independent contractor" relationship. Specifically, the lease provides:

> 15) The parties intend to create by the contract the relationship of Carrier and Independent Contractor and not an employer-employee relationship. Neither the Lessor nor its employees are to be considered the employees of the authorized carrier lessee at any time, under any circumstances or for any purposes.

The lease also provides that the equipment is "under the direction and control of the authorized carrier . . ." and further that the "Lessee further agrees to procure liability to protect the public and property damage and deductible cargo insurance as required by the Interstate Commerce Commission . . . ." Therefore, the lease between Fikes Truck Line and

3

Shuman deems the relationship an independent contractor relationship, but creates some control over Shuman by Fikes, seemingly in accordance with the ICC.

Moreover, Ray Shuman's tractor-trailer rig at the time of the accident was operating under Fikes Truck Lines' Contract Authority Permit and Certificate of Convenience and Necessity. Fikes Truck Line, Inc., logo placard was on the storage door under the sleeper cab of the tractor itself, as well as on the mudflaps. Shuman admitted that under applicable federal regulations, the tractor was required to have Fikes Truck Lines' name placard or logo on the doors of the tractor, and he complied with those regulations.

As explained in White v. Excalibur Insurance Co., 599 F.2d 50 (5th Cir. 1979), *cert. denied*, 444 U.S. 965, 100 S. Ct. 452, 62 L. Ed. 2d 377 (1979):

> Motor carriers had attempted to immunize themselves from the negligence of the drivers who operated their vehicles by making them all nominally "independent contractors." See generally Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., 423 U.S. 28, 96 S. Ct. 229, 46 L. Ed. 2d 169 (1975); American Trucking Assoc., Inc. v. United States, 344 U.S. 298, 73 S. Ct. 307, 97 L. Ed. 337 (1953); Alford v. Major, 470 F.2d 132 (7th Cir. 1972). In order to be certain that the public would be protected from the torts of these frequently insolvent operators, Congress in 1956 adopted amendments to the Interstate Motor Common Carrier Act requiring a motor carrier to assume "full direction and control" of leased vehicles. Because the carrier now has both a legal right and duty to control vehicles operated for its benefit, the employees of the vehicle-lessor are deemed statutory employees of the lessee-carrier to the extent necessary to insure the carrier's responsibility for the public safety just as if the lessee-carrier were the owner of the vehicles. Simmons v. King, 478 F.2d 857, 867 (5th Cir. 1973).

(Some citations and footnotes omitted). The purpose behind these leasing regulations "is to ensure that carrier-lessees take control of and responsibility for leased equipment during the term of a lease." Jackson v. O'Shields, 101 F.3d 1083, 1086 (5th Cir. 1996).

"Like other federal trucking regulations, § 376.12(c)(1) was 'intended to safeguard the public by

4

preventing authorized carriers from circumventing applicable regulations by leasing the equipment and services of independent contractors exempt from federal regulation.'" Republic Western Ins. Co. v. Williams, 212 Fed. Appx. 235, 241 (4th Cir. 2007) (quoting Hartford Ins. Co. of the Southeast v. Occidental Fire & Cas. Co. of N.C., 908 F.2d 235, 238 (7th Cir. 1990)).

In Zeringue v. O'Brien Transportation, Inc., the court found the owner-operator to be a statutory employee of the motor carrier where the lease established that the lessee had exclusive control and possession of the leased equipment. 931 So. 2d 377 (La. Ct. App. 2006). Moreover, the contract provided that the clause granting exclusive control to the carrier should not be used in order to classify the independent contractor, lessor, as an employee. The court found the owner-operator a statutory employee of the carrier and stated, "by design of the federal law [the carrier] is solely responsible for the rig 'as if it were the owner.'" Id. at 381 (quoting White, 599 F.2d at 54). Further citing White, the Louisiana appellate court noted, "Because of the grant of the legal right and duty over leased vehicles to the carrier, the employees of the lessor/vehicle owners are deemed statutory employees of the lessee/carrier under federal law." Id. at 380.

Similarly, in Johnson v. S.O.S. Transport, Inc., 926 F.2d 516 (6th Cir. 1991), the Sixth Circuit held that the Federal Motor Carrier Safety Act created a federal statutory presumption of control over a vehicle leased by a motor carrier. In that case, the district court granted summary judgment to the lessee in a wrongful death claim brought by the deceased driver's beneficiary. The Sixth Circuit reversed that ruling and held that based on the language in the Federal Motor Carrier Safety Act, "Congress intended that carriers who use leased equipment would be subjected to the same requirements, safety or otherwise, to which they would be subjected in using equipment owned by them." Id. at 523. Accordingly, the appellate court remanded the case for further proceedings

5

involving the lessee-carrier.

Thus, as was held in Jackson, where there is a valid existing lease between an ICC-authorized carrier and the actual owner of the vehicle, "the driver of the equipment will be deemed to be the carrier's statutory employee." Jackson, 101 F.3d at 1086.

Case law interpreting the Federal Motor Carrier Safety Act conveys that the federal statute preempts state law or common law claims of agency, respondeat superior, and vicarious liability. For example, the Fourth Circuit has held:

> The statute and regulatory pattern [of the Act] clearly eliminates the independent contractor concept from such lease arrangements and casts upon [the lessee] full responsibility for the negligence of [the driver] of the leased equipment. Any language to the contrary in the lease agreement would be violative of the spirit and letter of the federal regulations and therefore unenforceable.

Proctor v. Colonial Refrigerated Transp., Inc., 494 F.2d 89, 92 (4th Cir. 1974); see also Price v. Westmoreland, 727 F.2d 494 (5th Cir. 1984) (holding that federal regulation of interstate carriers preempts state law and common law of agency rending the lessee-carrier liable as a matter of law where the driver has been held negligent).

In Simmons v. King, the driver and regular employee of Ace, rear-ended another truck. At the time of the accident, the truck and driver (King) were leased to Dubose for the purpose of transporting a load of sugar from Louisiana to Memphis. The trial court instructed the jury that by agreement, the plaintiff was not guilty of any contributory negligence, but to find for the plaintiff against King and either Ace or Dubose or both. The jury found for the plaintiff, against King and Ace, with no liability to Dubose. The Fifth Circuit held that it was "incorrect for this issue to have been submitted to the jury in the manner done." Id. at 862.

The Fifth Circuit further held that under ICC regulations, King was a statutory employee of

6

Dubose, and therefore, Dubose was vicariously liable as a matter of law for the negligence of King. The court noted that if a lease existed between the ICC-authorized carrier and owner of the leased equipment and the equipment bore the carrier's ICC placard, the driver is deemed to be the carrier's statutory employee. Id. at 867. Moreover, the traditional common law doctrines of master-servant relationships and respondeat superior do not apply. Id. (citing Cosmopolitan Mutual Ins. v. White, 336 F. Supp. 92, 99 (D. Del. 1972)). The Court further advised the trial court that on remand, the jury should be instructed as to Dubose's liability as statutory employer of King.

Likewise, here, Shuman was hauling a load of barn tin from Vicksburg, Mississippi, to Greenville, Mississippi, under a contract with Fikes Truck Line. Regardless of his "independent contractor" title, Fikes, as a motor carrier under the Federal Motor Carrier Safety Act, is responsible for the control and maintenance of the leased truck. Therefore, Shuman is a statutory employee of Fikes, and as such, Fikes is vicariously liable for Shuman's negligence. Accordingly, at the end of trial, a jury instruction regarding Fikes' responsibility shall be given. Plaintiff's First Motion for Partial Summary Judgment is hereby granted.

SO ORDERED, this the  24th  day of June, 2008.

                                                   /s/ Sharion Aycock  
                                                  **U.S. DISTRICT JUDGE**